PUERTO RICO HOUSING AUTHORITY, Plaintiff and Appellee, *v.* SATURNINA SAGASTIVELZA ALVAREZ ET AL., Defendants and Appellants.

No. 10383. Argued March 1, 1951.—Decided March 6, 1951.

*Arturo Ortiz Toro* for appellant. *Rafael B. Pérez Mercado* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

This Court having denied on May 23, 1950 a "Motion seeking the reversion of the title and possession of the property", filed by defendant Saturnina Sagastivelza Alvarez, on the grounds that since the matter had not been previously raised or decided by the Court of Eminent Domain we should not take cognizance of the same as an integral part of the appeal pending before us, and that since this Court was not a court of first instance we could only take cognizance of those cases and proceedings over which, by express provision of law, we were granted original jurisdiction,[1] said defendant filed an identical motion in the Court of Eminent Domain on June 3, of the same year. She alleged in substance that she, the defendant Sagastivelza Alvarez, on and prior to December 11, 1944 was the owner in fee simple of a farm having an area of 38.24 cuerdas located in the Viví Abajo Ward in the municipality of Utuado; that the plaintiff instituted condemnation proceedings in the District Court of Arecibo on or about December 11, 1944 and deposited the sum of $10,702 with the Clerk of said court as the reasonable compensation to be paid, which sum defendant has rejected entirely at all times because in her opinion the action does not lie; that the case was transferred to the Court of Eminent Domain,[2] where after a hearing judgment was rendered on June 6, 1949 declaring the farm in question definitely condemned by plaintiff; that notwithstanding the fact that 11 months and 21 days have elapsed since the judgment ordering the condemnation was rendered, the Authority has not made use of the property; that pursuant to § 7 of the Eminent Domain Act of March 12, 1903, as it stood at the time the action was brought, if the condemnor fails to make use of the condemned property within the term of six months, when no term is fixed, count-

---

[1] See *Housing Authority* v. *Sagastivelza*, 71 P.R.R. 406.

[2] Section 4 of Act No. 223 of May 15, 1948, pp. 774, 778.

ing from the date of the final order, the party dispossessed may recover the property, upon returning the amount received; and that according to defendant's best information and belief the plaintiff has leased the property in question to a third person for truck gardening, that is, for a purpose other than that for which the property was condemned.

The plaintiff opposed the aforesaid motion of Sagasti-velza Alvarez, the defendant, alleging among other reasons (1) that the Court of Eminent Domain lacks jurisdiction to grant the relief sought; (2) that when the hearing of the case was held as well as when judgment was rendered on June 6, 1949, § 7 of the Eminent Domain Act on which defendant relies had been repealed by § 3 of Act No. 105 of 1948 for which reason said defendant is not entitled to the reversion sought by her; (3) that at present the only right to which the owner of a condemned property is entitled is that granted to him by Act No. 441 of May 14, 1947, as amended by Act No. 375 of May 14, 1949, consisting in a preferential right to reacquire said property when the condemnor "decides to alienate, in whole or in part, the properties condemned"; and (4) that the construction applied by this Court to § 7, *supra*, is erroneous insofar as we held that the provisions of the same are applicable to the plaintiff.

After a hearing, the Court of Eminent Domain issued an order declaring itself without jurisdiction to determine the matter raised before it. It relied on the fact that since the parties had appealed to this Court from the judgment rendered on the merits of the case, it lacked jurisdiction to take cognizance of the proceedings pursuant to the provisions of § 297 of the Code of Civil Procedure and accordingly, it dismissed the motion. Defendant appealed and alleges that the lower court erred in declaring itself without jurisdiction over said matter. In our opinion this error was committed.

■ Section 297 of the Code of Civil Procedure on which the Court of Eminent Domain based its decision provides:

"Whenever an appeal is perfected, it stays all further proceedings in the court below, upon the judgment or order appealed from, or upon the matters embraced therein; *but the court below may proceed upon any other matter embraced in the action, and not affected by the order appealed from.*" (Italics ours.)

Before proceeding with this opinion it is advisable to point out, even if it be a digression, that on March 20, 1947, the defendants filed in the District Court of Arecibo, their first motion of this sort seeking likewise the reversion of the title and possession of the property. They relied on the fact that since the final order in the condemnation proceeding was issued on November 8, 1945, and since more than six months had elapsed without the condemnor making use of the property condemned for the purpose alleged in its condemnation petition the reversion claimed was proper. We decided that said action was premature because said period begins to run from the date of the final judgment and not from the date of the aforesaid order. See *Puerto Rico Housing Authority* v. *District Court*, 68 P.R.R. 50; *Sagastivelza* v. *Puerto Rico Housing Authority*, 171 F. 2d 563.

As it may be seen, § 297 of the Code of Civil Procedure clearly provides that whenever an appeal is perfected, it stays all further proceedings in the court below, upon the judgment or order appealed from, or upon the matters embraced therein. It also provides that "the court below may proceed upon any other matter embraced in the action, and not affected by the order appealed from." However, the only connection between the motion for reversion filed by defendant and the judgment appealed from is the date of the judgment on the merits of the case which is the starting point for counting the six-month period to which

the Act of Eminent Domain referred. Consequently, it may be said that the motion for reversion is not a question embraced in the final judgment. This being so, it is clearly inferred pursuant to the provisions of the last lines of § 297, *supra*, that the Court of Eminent Domain had jurisdiction to entertain the motion filed therein.

Interpreting § 297, *supra*, we have already decided that notwithstanding the appeal to this Court the court below retains jurisdiction to entertain proceedings with respect to the effectiveness of the judgment rendered, as well as to entertain motions for new trial and everything relating to the transcript of the evidence required by law to perfect the appeal. And this is so, because like the motion for reversion involved herein, those are matters not embraced in the judgment appealed from. *Gandía* v. *Puerto Rico Fertilizer Company*, 30 P.R.R. 243; *Buxó, Jr.* v. *District Court*, 51 P.R.R. 311, 317; *Molina* v. *Rodríguez*, 63 P.R.R. 458; *Guilhon & Barthelemy* v. *District Court*, 64 P.R.R. 289. As said in 2 Cal. Jur., p. 418, § 180, "An appeal does not operate to divest a trial court of jurisdiction to hear and determine question arising in proceedings independent of and collateral to the proceeding wherein the judgment or order appealed from was rendered." To the same effect see 3 Am. Jur., p. 194, § 531. Since the motion for reversion filed by defendant constitutes, as we have said, a question independent of, although intimately connected with, the proceeding wherein the judgment was rendered, the appeal taken from said judgment did not divest the Court of Eminent Domain of jurisdiction to hear it.

■■ The plaintiff also insists that the Court of Eminent Domain lacked jurisdiction to entertain the motion for reversion because it was a matter somewhat extraneous and foreign to the condemnation proceeding itself, for which reason said question should have been raised before a district court of general jurisdiction. We disagree. Section

3 of Act No. 223 of May 15, 1948 (p. 774) which created the Court of Eminent Domain of Puerto Rico, as amended by Act No. 178 of May 4, 1949 (pp. 560, 562), provides:

"The Court of Eminent Domain of Puerto Rico shall exercise exclusively and over all of the territory of Puerto Rico the same original jurisdiction, that the Tribunal of the Judicial District of San Juan and the district courts have been exercising up to the effective date of this Act in cases of condemnation of property for public purposes."

It is unquestionable that prior to the passing of said Act a motion for reversion, such as the one involved herein, should have been properly filed in the district court which took cognizance of. the condemnation proceeding. Since the Court of Eminent Domain of Puerto Rico was vested exclusively with the same original jurisdiction that district courts had over condemnation proceedings prior to the enactment of Act No. 223, it is illogical to assume that said jurisdiction was conferred on it fractionally and that the Court of Eminent Domain may at present hear and determine a condemnation proceeding but not an incident related to the reversion of the condemned farm.

Hence, the Court of Eminent Domain had jurisdiction to take cognizance of the motion filed therein. However, since the final judgment to which we referred in our afore-cited opinion of January 23, 1948 (68 P.R.R. 50) has not yet been rendered, there is no question that the defendant's motion for reversion was prematurely filed and for that reason it should be dismissed.

██ Nevertheless, in order not to delay the final determination of the matter, which, as we have seen, has been thrice brought up, we shall turn to discuss another question raised by the appellee. It is to the effect that any right of reversion which the defendant might have had under § 7 of the Eminent Domain Act ceased to exist after the repeal of said Section. Section 7 of the Eminent Domain Act of

March 12, 1903 (Sess. Laws, p. 50), Revised Statutes of 1911 (p. 84), Code of Civil Procedure, 1933 ed. (p. 301), as amended by Act of March 12, 1908 (Sess. Laws, p. 94) provided that:

"In all cases of condemnation, sale, transfer, or voluntary alienation of property for the performance of a work of public utility, whenever such work is not completed within the time fixed by the concession or franchise, or, in case no time is so fixed, within the term of six months, counting from the date on which the final decision ordering the condemnation was rendered, the party dispossessed or who voluntarily sold, transferred or encumbered his right of ownership shall have a right of action to recover the property condemned, returning the amount received."

Said Section was, however, expressly repealed by § 3 of Act No. 105 of May 7, 1948 (Sess. Laws, pp. 240, 246). Therefore, when on June 3, 1950 defendant's motion for reversion, to which we have alluded, was filed in the Court of Eminent Domain, said Section had already ceased to exist. The defendant maintains, however, that since the action was commenced at a time when said Section was yet in force, there arose in her favor, in spite of the repeal of § 7, a vested right which should be respected and that in harmony with the provisions of said Section she is entitled to the reversion sought. It is obvious that in the case at bar the defendant was not able to exercise the right to request a reversion of the condemned property while § 7 was in force. We have already indicated that an action brought by her on March 20, 1947 counting from the date of the order of taking—not of the final judgment—was dismissed as premature. The fact that the condemnation proceeding was filed at a time when § 7 was in force does not by itself entitle the defendant to the reversion of the property, since said right, in any event, would arise only six months after the date of the final judgment in the condemnation suit. Said judgment has not yet been rendered. From the filing

of the condemnation proceeding until final judgment is rendered the defendant has merely a potential interest or a right in expectancy to the reversion of the property but said expectant right never materialized prior to the rendition of the final judgment and consequently it never became a vested right. As we said in *Rodríguez* v. *Miller*, 23 P.R.R. 551, 558, "That such mere expectancy can never be regarded as a vested right is a most elementary principle," Cooley's Constitutional Limitations, p. 511.[3] Consequently the reversion sought does not lie.

Since § 7 of the Eminent Domain Act, as we have already pointed out, was repealed, and since this is not a case where an agency with a recorded title to the condemned property has decided to alienate it in whole or in part,[4] we find it unnecessary to discuss the third and fourth questions raised by plaintiff in its opposition to the motion for reversion.

Notwithstanding the error committed by the lower court in declaring itself without jurisdiction to entertain the defendant's motion, its order appealed from will not be reversed and for the reasons stated judgment will be rendered affirming said order and dismissing defendant's motion.

---

[3] See also *Luján* v. *Insular Police Commission*, 38 P.R.R. 52; Cooley's Constitutional Limitations, Eighth Edition, p. 749; *Cf. Zayas Pizarro* v. *Molina*, 54 P.R.R. 619; and *Oliveras* v. *The Registrar of Property*, 13 P.R.R. 103.

[4] According to § 1 of Act No. 441 of May 14, 1947 (Sess. Laws, p. 920), as amended by Act No. 375 of May 14, 1949 (Sess. Laws, p. 1148), "All natural or artificial persons against whom condemnation proceedings were prosecuted by . . . agencies, or instrumentalities thereof, shall have the preferential right to reacquire possession of and title to said properties whenever the People of Puerto Rico or the department, agency, or instrumentality thereof which has the title to said property registered in its name, decides to alienate, in whole or in part, the properties condemned; . . ." However, that is not the situation involved herein.