PUERTO RICO HOUSING AUTHORITY, Plaintiff, Appellee and Appellant, *v.* SATURNINA SAGASTIVELZA ALVAREZ ET AL., Defendants, Appellants and Appellees.

No. 10173. Argued March 1, 1951.—Decided March 19, 1951.

264

*Arturo Ortiz Toro* for appellant-appellee. *Rafael B. Pérez Mercado* for appellee-appellant.

Mr. Justice Marrero delivered the opinion of the Court.

By judgment rendered by the Court of Eminent Domain of Puerto Rico on June 6, 1949 the farm having an area of 38.24 cuerdas and owned by defendant Sagastivelza Alvarez was declared definitively condemned in favor of Puerto Rico Housing Authority, plaintiff herein. As total compensation for the property with its accessions it fixed the sum of $14,400, of which amount the plaintiff had only to deposit $3,698 for it had deposited $10,702 on requesting the order of taking. As to said difference it was stated in the judgment that the same would be deposited "without interest of any kind considering that defendant Saturnina Sagastivelza has retained, after condemnation, the possession and enjoyment of the condemned farm."[1]

The plaintiff as well as the defendant appealed from said judgment. Since the only error assigned by the plaintiff has the same scope as defendant's second assignment, that is, since according to plaintiff the lower court erred "in deciding: (1)

---

[1] The history of this case may be found in the following cases: *P. R. Housing Authority* v. *District Court*, 68 P.R.R. 50; *Sagastivelza* v. *Puerto Rico Housing Authority*, 171 F. 2d 563; *Housing Authority* v. *Sagastivelza*, 71 P.R.R. 406; and *Housing Authority* v. *Sagastivelza, ante*, p. 224.

that the plaintiff was not entitled to the restitution of the fruits received by the defendant during 1945, 1946 and 1947 from the crops planted without its authorization after the order vesting title was rendered; (2) that there was no rule applicable to the solution of the legal problem raised and it should therefore be decided pursuant to § 7 of the Civil Code;" while defendant alleges that the lower court erred in "not ordering the plaintiff to pay the defendant interest at 6 per cent from December 11, 1944 on the difference between the sum deposited and that fixed by the court as the total compensation for the condemned farm," we shall discuss both errors together.

█ When the trial of this case was in its last stages, and while Miguel Chico, defendant's son, was testifying, after he was questioned by the plaintiff on the production of the condemned farm and after Chico had answered the questions put to him on the matter, said plaintiff asked leave of the court to amend the prayer of its complaint to conform it to the evidence in the sense that the sum of five or six thousand dollars which the defendants had obtained as profit from the cultivation of the farm after the latter had passed to the Housing Authority should be deducted from the compensation that might be awarded. The defendant objected and after hearing both parties extensively, the court stated that the point was very interesting but that it was not in a position to decide it immediately and left pending the proposed amendment until after the court were duly informed by both parties. At the same time it overruled a motion for an inspection. The defendant took an exception.

In the course of its opinion, when touching on the question thus raised by both parties, the Court of Eminent Domain expressed itself as follows:

"In addition to the question concerning the value of the condemned property there was another question of whether the plaintiff had a right to recover the net value of the fruits received by defendant Saturnina Sagastivelza during the three

years subsequent to the condemnation, that is, 1945, 1946 and 1947, during which years she continued in the possession and enjoyment of the condemned farm notwithstanding the fact that the title to the same had been vested in the plaintiff. From the whole proceeding it is clear that the defendant continued in the possession of the farm during the said years. Defendant's son, testifying for her, admitted having managed the immovable during said years in the name of the defendant and having received for her the fruits yielded by the same.

"The plaintiff bases its claims on §§ 287, 288, 289, 292, 293, 297, 298, 300, 382 and 283 of the Civil Code.

"Both parties introduced extensive briefs on this matter.

"The Court has serious doubts on the applicability of the provisions quoted by the plaintiff to the problem involved in the case at bar. In the first place the defendant continued in the possession of the property with the plaintiff's knowledge without the latter exhausting the relief provided by the Act to deprive the defendant of said possession. In addition, on June 4, 1947 the defendant obtained judgment in the District Court of Arecibo wherein she recovered the title to the condemned property and although this judgment was reversed by the Supreme Court and said reversal affirmed by the Circuit Court of Appeals of Boston, apparently during said time the defendant possessed the property under the protection of the judgment of the District Court of Arecibo.

"In view of the particular circumstances surrounding this case, the court believes that there is no specific rule applicable to the solution of the problem involved and under those conditions it believes that it should apply § 7 of the Civil Code which provides that 'when there is no statute applicable to the case at issue, the court shall decide in accordance with equity, . . .' So, applying an equitable criterion to the circumstances of the case, *the Court denies the restoration of the fruits sought, but considering the use given by defendant to the condemned farm, it will not grant interest to the defendant on the difference between the compensation fixed and the deposit made in court by the plaintiff at the commencement of the proceeding.* The court wishes to make clear that this decision can not be regarded as a uniform rule for all the cases where a defendant in a condemnation proceeding continues in the possession and enjoyment of the property subsequent to the vesting of the

title in favor of the plaintiff party, for each case should be decided according to its particular circumstances, as was done in this case." (Italics ours.)

It was an error of the lower court to decide the question as it did. By express provision of § 5(*b*) of the Eminent Domain Act of March 12, 1903, (p. 50) ; Revised Statutes of 1911 (p. 86) as amended by Act No. 105 of May 7, 1948 (p. 240) it is ordered that "in any judgment rendered in a condemnation proceeding for the acquisition of private property . . . in which the amount determined by the court as just compensation for such property . . . is greater than the amount fixed by the said plaintiff and deposited in the court as just compensation for such property or the rights therein, The People of Puerto Rico shall pay the amount of the difference between the sum thus fixed by the said plaintiff and deposited by him in the court and the sum that for the purpose has been determined by the court as just compensation for said property or the rights therein, the object of such proceeding, with interest at the rate of six per centum per annum on such difference, to be computed from the date of the acquisition of such property . . . up to the date of the payment of such difference." In view of such an imperative provision it was the duty of the lower court to order the condemnor to pay interest at 6 per cent on the difference between the amount fixed as a just compensation for the condemned immovable and the sum deposited by the condemnor, from December 11, 1944, date of the taking, until the payment of said difference.

Furthermore, since the Court of Eminent Domain had full knowledge of the fact that the plaintiff had the ownership in fee simple of the condemned farm,[2] since December 11, 1944, the date on which the order of taking was issued, it was its duty to determine whether it had the right to be compensated by the defendant for the possession and illegal

---

[2] See § 5(*a*) of the Eminent Domain Act as amended by Act No. 19 of November 30, 1942, pp. 82, 88 and *Santiago* v. *Tax Court*, 71 P.R.R. 688.

use by the latter of the farm involved herein. We shall not stop to determine whether the possession of the defendant was in good or bad faith. Likewise, we shall not decide now whether it was the defendant herself, Sagastivelza Álvarez, who was in possession of the farm or if on the contrary it was her son Miguel Chico in his own name. Those are questions which should be decided in the first instance by the Court of Eminent Domain when the case is remanded. What we do decide now is that in the light of the provisions of § 256 of the Civil Code, 1930 ed., the property in question once the order of taking was issued, was community property and that §§ 283 to 300 of the Civil Code are applicable to the case at bar, but that even assuming they were not, if it were proved that the defendant was in possession of the condemned farm subsequent to the date of the order of taking, the plaintiff would in any event be entitled to receive a reasonable amount for the use thereof. *Cf. Ball* v. *Vilá*, 67 P.R.R. 388.

■ On the other hand, if the lower court had any doubts as to whether the amendment sought by the plaintiff in relation to the profits and rents should be allowed, upon authorizing said amendment, it should have given an opportunity to the defendant, as she requested, to introduce evidence to overcome the one already introduced by the plaintiff to that effect. It was an error not to do so. *Balzac* v. *Torres*, 68 P.R.R. 908, 913.

■ The aforesaid errors of the Court of Eminent Domain warrant the reversal of the judgment. They suffice to so decree and to remand the case. However, as this is the fourth opinion delivered by us in connection with the rights of the parties, in order to prevent further delays we shall discuss the remaining errors assigned by defendant.

The first error assigned by the defendant is that the lower court erred in failing to set aside the order of December 11, 1944 and in not restoring the title to the defendant in the farm in question. The order of that date is nothing more

than the order of taking which transferred the title of the property in question to the plaintiff. This Court has already decided conclusively, by a judgment of March 6, 1951 that the reversion alleged by the defendant does not lie. See our opinion of said date, *ante*, pp. 224, 231. Now, defendant also discusses this error from the point of view that the condemnanation is unconstitutional because notwithstanding the years that have elapsed since the taking, the plaintiff has not devoted the farm object of the proceeding to the public purpose for which it was condemned. We have already decided that the purpose of the condemnation of farms for the elimination of slums is of a public character. *McCormick* v. *Marrero, Judge*, 64 P.R.R. 250, 257. Although there are authorities who establish the principle that land taken for a public use shall be devoted to that use within a reasonable time—18 Am. Jur., p. 747, § 123; Ann. Cas. 1915 B, p. 993—nevertheless accepting said principle as correct for the sake of argument and although it is true that in the case at bar at the end of the year 1949, the plaintiff leased the farm in question to the defendant's son for a nominal rent, the plaintiff has maintained that it has done so not for lucrative purposes but in order to have somebody in charge of the property, it has proved having a real interest in the same and it has defended at all times its rights before the court in connection with the condemnation. See 18 Am. Jur., *supra*, and Ann. Cas., *supra*.

The third assignment made by the defendant refers to the value fixed by the court to the condemned farm. As the case will be remanded for new trial it is unnecessary to discuss this error.

The fourth error is to the effect that the Court of Eminent Domain erred (*a*) in not admitting in evidence certain photographs introduced by defendant; (*b*) in ordering the suppression of Rafael Rodríguez Archilla's testimony on the sales of lots; (*c*) in not admitting questions on the

number of lots which could be obtained from the condemned farm; (d) in not admitting evidence on the selling price of properties conveyed to the People of Puerto Rico; (e) in not admitting a question on the purpose for which the farm was being condemned; and (f) in denying the request for an inspection. The photographs introduced in evidence were clearly inadmissible since they did not reflect the factual conditions existing in the property object of the condemnation or in its surroundings at the date on which the condemnation proceeding was instituted. It is settled that in cases of this nature the reasonable value of the immovable to be condemned is that which the immovable had at the date of the condemnation. *People* v. *Carmona*, 70 P.R.R. 292, 295; *United States* v. *Miller*, 317 U. S. 369; 87 L. Ed. 336; 18 Am. Jur., p. 991, § 347.

 The defendant maintained that the condemned farm could be urbanized and subdivided in lots. For the purpose of illustrating it, she asked the witness Rodríguez Archilla several questions in connection with the sales of certain adjoining lots made by the latter. When the witness testified that said sales had been effected without a permit from the Planning Board, the plaintiff requested the suppression of his testimony to this respect and the court ordered so, to which the defendant excepted. Considering the purpose to which the defendant alleged that the farm could be devoted, the testimony of the witness was relevant and consequently admissible. *Cf. Puerto Rico Housing Authority* v. *Valldejuli*, 71 P.R.R. 600; 18 Am. Jur., *supra*. The fact that the sales of lots were made without authorization from the Planning Board did not render the testimony inadmissible.

The number of lots which could be obtained from the condemned farm was immaterial since, naturally, it all depends on the size of the lots, width of the streets, etc. Nevertheless, see 18 Am. Jur., *supra*.

 Witness Luis Pérez Matos was asked by the defendant if about the year 1944 he had sold any land adjoining

the farm object of the condemnation to the People of Puerto Rico. The plaintiff objected and the court sustained the objection. The defendant took an exception. As we said in *Housing Authority* v. *Valldejuli, supra,* "contemporaneous purchases by the condemnor itself of land similar to the condemned land are admissible in evidence on the issue of the fair value of the latter land, provided the person offering them in evidence shows that they were free and voluntary and that the land purchased was similar, although not equal, to the condemned land." Consequently, the Court of Eminent Domain should have admitted the first question which was being asked the witness in order to determine accordingly whether the sale was voluntary or not and if the lands bought were similar to those condemned.

■ Upon examining Fausto Olano Sbert, the plaintiff asked him which was, in his opinion, the best use for which the farm condemned was prepared. The witness answered that for agricultural purposes, for the planting of sugar cane, tobacco and truck gardening in the higher land. The defendant then asked him for what purpose it was being condemned. The plaintiff objected and the court sustained it. The question was admissible since it was trying to prove that the farm was being condemned for housing construction.

■ The granting of an inspection rests in the sound discretion of the trial court and we are not convinced that in this case said discretion was abused. *People* v. *García,* 66 P.R.R. 478, 487; *Martínez* v. *Martínez,* 68 P. R.R. 191, 195.

As to the fifth and last error to the effect that the court *a quo* erred in not ordering the plaintiff to pay costs and attorney's fees, we prefer not to discuss it now since we do not know what judgment will be ultimately rendered in the case. Nevertheless see *People* v. *García, supra.*

The judgment appealed from will be reversed and the case remanded to the Court of Eminent Domain for further proceedings not inconsistent with this opinion.